STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 10-712


JUANITA QUINN

VERSUS

VIDALIA APPAREL


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - #1E
PARISH OF OUACHITA, NO. 07-00261
BRENZA IRVING, WORKERS' COMPENSATION JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Billy
Howard Ezell, Judges.

**AFFIRMED AS AMENDED.**

**Paul Howard Benoist**
**Benoist Law Offices**
**329 Market Street**
**Natchez, MS 39120**
**(601) 445-4148**
**Counsel for Plaintiff/Appellee:**
**Juanita Quinn**

**Brad O. Price**
**6513 Perkins Road**
**Baton Rouge, LA 70808**
**(225) 757-8908**
**Counsel for Defendant/Appellant:**
**Vidalia Apparel**

**EZELL, JUDGE**.

Several issues are raised in this appeal of a workers' compensation case. Vidalia Apparel filed this appeal claiming that the workers' compensation judge (WCJ) erred in finding that Juanita Quinn suffered a work-related accident and is now temporarily totally disabled. It also complains about the award of penalties and attorney fees and that the WCJ erred in her determination of the compensation rate. Ms. Quinn answered the appeal. Ms. Quinn argues that the WCJ should have determined that employer fraud was present pursuant to La.R.S. 23:1208. She also complains about the amount awarded for attorney fees at the trial level and asks for additional fees for work performed at the appellate level.

## FACTS

Ms. Quinn began working for Vidalia Apparel in 1999. Vidalia Apparel distributes Fruit of the Loom clothing. She was employed as picker whose job is to get the boxes needed to fill orders as they come in to the warehouse. On November 16, 2006, Ms. Quinn filed a disputed claim for compensation alleging that she had injured her back while working for Vidalia Apparel in February 2006. Ms. Quinn could not remember the exact date. She testified that the accident occurred around 1:30 to 2:00 p.m. Ms. Quinn stated that she injured her back while picking up a "4x" box weighing fifty to seventy pounds. She felt something pop and dropped the box.

Ms. Quinn testified that she reported the incident to her immediate supervisor, Bobby Whitley. Mr. Whitley told her to go see the nurse, Rhonda Hunt. Ms. Quinn stated that Ms. Hunt told her it was a muscle spasm. Ms. Hunt gave Ms. Quinn an ice pack. Ms. Quinn sat in the nurse's office for about twenty minutes. She was then told to go wait in the break room until her shift ended. Ms. Quinn returned to work the next day.

1

Dr. Ibrahim Seki, Ms. Quinn's treating physician for high blood pressure since November 2005, initially saw Ms. Quinn on March 22, 2006, following her accident. It appears that this is the first visit that Ms. Quinn reported leg and back pain, as it was circled in Dr. Seki's notes. Dr. Seki ordered an MRI of the lumbar spine which was performed on March 28, 2006. Mild disk desiccation was noted at L2-3. Broad-based disk bulging was observed at L5-S1 with bilateral foraminal encroachment.

On April 6, 2006, Ms. Quinn went to Passman-Haimson Orthopedic, Sports, and Rehab in Natchez, Mississippi, for treatment of her back problems. She had seen Dr. J.C. Passman at this facility in March 2005 for swelling in her left ankle. At the April 2006 visit she complained of low back pain that she had for months that radiated down her left leg to the ankle. She also complained that her back was giving her problems at work. Dr. Robert Haimson took her off work and continued her on an outpatient physical therapy program. He also prescribed a lumbar corset.

In May 2006, Dr. Haimson noted that Ms. Quinn had not had significant relief with her physical therapy nor the lumbar corset. He wanted to refer her to a spine surgeon with the approval of the workers' compensation insurer. Dr. Haimson continued Ms. Quinn on a no-work status. Dr. Haimson also ordered Ms. Quinn to proceed with her physical therapy.

Ms. Quinn saw Dr. Bruce Senter at the Mississippi Spine Clinic on June 30, 2006. Ms. Quinn's history indicated that she had low back pain for years but that it had increased over the left leg for the last six months. Dr. Senter agreed that Ms. Quinn had a Grade 1 L5-S1 spondylitic spondylolisthesis with left L5 radiculopathy, secondary to some significant foraminal stenosis. At that time, Dr. Senter recommended a lumbar epidural but suggested she would need a fusion and decompression if the epidural did not work.

Ms. Quinn was anxious about surgery so she went to see Dr. Arnold Feldman at the Pain Treatment Center in Baton Rouge to inquire about the new laser surgery he was performing. Dr. Feldman evaluated Ms. Quinn on August 10, 2006. She related to him that she had lower back pain for about six months. Dr. Feldman also recommended an epidural steroid injection before proceeding with any surgery. Ms. Quinn told Dr. Feldman she just wanted to be "fixed."

On August 23, 2006, Dr. Feldman performed an endoscopic discectomy. Ms. Quinn initially progressed. However, she started having extreme pain in her left ankle, and her back eventually began hurting again. In October 2006, an MRI was performed. It indicated a large left lateral disc herniation at L5-S1.

On December 4, 2006, Ms. Quinn received a lumbar epidural block. Ms. Quinn indicated that this helped her leg pain but that she still had back pain. On January 8, 2007, Ms. Quinn had a second epidural block. She improved initially, but the improvement did not last. On February 5, 2007, Ms. Quinn had an additional epidural block. She only received one week of relief.

An MRI on March 13, 2007, indicated Grade I anterior spondylolisthesis at L5-S1. A posterior disc protrusion was also observed on the left with left lateral disc herniation with significant bilateral neural foraminal stenosis, the left greater than the right. The records indicate that Dr. Feldman last saw Ms. Quinn on June 30, 2007. Her pain was severe. At that time, the plan was to schedule another epidural block. The possibility was also discussed that she may need another endoscopic procedure.

Ms. Quinn filed her disputed claim for compensation in November 2006 seeking wage benefits and medical treatment. In response, Vidalia Apparel alleged that no specific and identifiable accident had occurred. Trial on this matter was held on October 23 and November 13, 2009.

The WCJ found that Ms. Quinn was very credible and that her testimony concerning the occurrence of an accident was very persuasive. The WCJ found that Ms. Quinn was disabled from the date of the work accident, which she found to be February 1, 2006, until her release to return to work or her medical condition changes. Vidalia Apparel was ordered to pay weekly indemnity benefits in the amount of $454.00 a week in addition to all reasonable and necessary medical treatment. Finding that Vidalia Apparel did not reasonably controvert Ms. Quinn's claims and was arbitrary and capricious in its failure to pay her benefits and provide medical treatment, Ms. Quinn was awarded a $2,000.00 penalty for Vidalia Apparel's failure to pay indemnity benefits and an additional $2,000.00 penalty for Vidalia Apparel's failure to pay her medical expenses. Attorney fees in the amount of $10,000.00 were also awarded.

Vidalia Apparel appealed the judgment asserting several assignments of error. Ms. Quinn answered the appeal asking for additional attorney fees and alleging employer fraud.

## WORK ACCIDENT

Vidalia Apparel argues that the WCJ erred in finding the occurrence of a work-related accident on February 1, 2006. Vidalia Apparel claims that the trial court ignored the evidence in this case and rested its opinion solely on the testimony of Ms. Quinn. Vidalia Apparel argues that Ms. Quinn's testimony and the testimony of fellow workers, in addition to her requests for leave and her medical records, indicate that Ms. Quinn was not credible as found by the WCJ.

In discussing an employee's burden in establishing a work-related accident, this court noted the applicable law as follows:

4

A worker bringing a compensation action against her employer bears the burden of proving, as a threshold requirement, that she suffered "personal injury by accident arising out of and in the course of employment." La.R.S. 23:1031; *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1). Jurisprudence has held that an accident may include a routine movement or task that the employee regularly performs, provided that the claimant is able to identify, with some particularity, the time, place, and manner in which the accidental injury objectively manifested itself. *McCall v. Wal-Mart Stores, Inc.*, 02-1343 (La.App. 3 Cir. 3/5/03), 846 So.2d 832, *writs denied*, 03-1329, 03-1343 (La.9/19/03), 853 So.2d 639, 641.

The plaintiff bears the burden of establishing that a work-related accident occurred by a preponderance of the evidence. *Bruno*, 593 So.2d 357. This burden of proof is applicable even when the worker is the sole witness of the accident. *Id.*

A worker's testimony alone may be sufficient to discharge her burden of establishing a work-related accident provided that no evidence discredits or casts serious doubt upon her version of the incident and the worker's testimony is corroborated by the circumstances following the alleged incident, including medical evidence or the testimony of co-workers, friends, or the worker's spouse. *Id.*

The trial court's determinations as to whether a plaintiff in a workers' compensation case is credible and whether she has discharged her burden of proof are factual determinations that should not be disturbed upon appellate review unless clearly wrong or manifestly erroneous. *Id.*

This court has noted, in the context of a workers' compensation suit, the well-accepted principle that credibility calls are the function of the trial court. *McCall*, 846 So.2d 832.

*Dantley v. Lake Charles Mem'l Hosp.*, 07-1227, pp. 2-3 (La.App. 3 Cir. 3/5/08), 978 So.2d 1117, 1119-20.

The determination of an actual date of an employee's work-related accident is not necessary when there is other evidence that corroborates a finding of a work-related accident by a preponderance of the evidence and pertinent dates for determining whether the employee's claim for benefits had prescribed are

determinable. *White v. Phoenix Pharmacy*, 03-1624 (La.App. 3 Cir. 4/7/04), 870 So.2d 592, *writ denied*, 04-1150 (La. 7/2/04), 877 So.2d 147.

At trial, Mr. Whitley testified that he did not remember Ms. Quinn reporting an accident to him. He stated that if an accident had been reported, an accident form would have been filled out and there would have been an investigation.

Ms. Hunt also testified that Ms. Quinn did not come see her. There was no record of Ms. Quinn visiting Ms. Hunt around February or March 2006 in the first aid log.

Kathy Wall, safety supervisor in 2006, also had no knowledge of Ms. Quinn's accident. She testified that she would perform an investigation if an employee reports an accident.

Alma Fletcher, the human resources manager at Vidalia Apparel, testified that Ms. Quinn never mentioned she hurt her back. Ms. Fletcher testified that she did not question Ms. Quinn's request for leave due to "moderate to severe low back pain" because of HIPPA regulations. Her first notice that Ms. Quinn was hurt at work was when the disputed claim form was filed.

Ms. Quinn was terminated from her job on April 25, 2006, after she was on leave for about a year. The reason given in her personnel file was "Expiration of leave of Absence according to Company Policy." Ms. Fletcher verified that it is company policy that an employee is terminated if he or she does not come back to work after a year.

Ms. Quinn introduced the testimony of Juanita Reed who was working at Vidalia Apparel at the time. Ms. Reed testified that sometime in February or March 2006 she went to the cubicle to order her boxes when she saw Ms. Quinn in Mr. Whitley's cubicle. Ms. Quinn was crying and stated, "'Bobby, I can't go back out.

I'm hurting.'" Later, Ms. Reed saw Ms. Quinn sitting in the break room with an ice pack. When Ms. Reed asked her what was wrong, Ms. Quinn stated that she was hurting.

Ava Wright, another former worker at Vidalia Apparel, also passed the break room and saw Ms. Quinn with an ice pack. Ms. Quinn told her a few days later that she had hurt her back.

Ms. Quinn agreed that she could not remember the exact date of her accident. She also returned to work the day after the accident. Ms. Quinn initially saw Dr. Seki for ankle and leg pain in February 2006. However, she did make an initial report of leg and back pain on March 22, 2006.

While there is no documentation pinpointing an exact date of the accident, we cannot say the WCJ committed manifest error in finding a work-related accident occurred. Ms. Quinn agrees that she could not remember the exact date of the accident. She went to see Dr. Seki about her back injury in March, which is when he ordered the MRI which showed a herniated disk. When questioned why none of the doctors' records indicate that she hurt her back at work, she explained that the doctors told her that her private insurance would not pay if it thought it was a work-related claim. She was on leave from work under the Family Medical Leave Act. She was not getting paid and not receiving benefits.

While we agree that February 1, 2006, may not be the exact date of Ms. Quinn's accident, both she and two witnesses corroborated that she suffered an accident sometime in February or March 2006. Ms. Quinn related the details of a specific incident of lifting a box, hearing a pop in her back, and experiencing pain. Two witnesses confirmed that they saw Ms. Quinn crying and in pain during this time period. Ms. Quinn admitted that she initially returned to work following her accident.

7

Ms. Quinn did not report any back problems to her treating physician until she saw Dr. Seki on March 22, 2006. An MRI ordered at that time revealed a herniated disk.

We find no manifest error in the WCJ's finding that Ms. Quinn was a credible witness and that she established by a preponderance of the evidence that she suffered a work-related accident.

## PENALTIES AND ATTORNEY FEES

Vidalia Apparel also claims that the WCJ erred in awarding penalties and attorney fees based on an arbitrary and capricious standard when no benefits were ever paid. Vidalia Apparel argues the WCJ utilized La.R.S. 23:1201(I) which provides for penalties and attorney fees for failure to handle the payment of compensation or medical benefits properly. Instead, it argues it should have been subjected to a reasonably controverted standard as set forth in La.R.S. 23:1201(F)(2) because it completely denied the claim.

In written reasons for judgment, the WCJ found that Vidalia Apparel was arbitrary and capricious in its denial of Ms. Quinn's claim. Also, the judgment itself stated that Vidalia Apparel did not produce sufficient evidence to reasonably controvert the claim and was arbitrary and capricious in its refusal to pay wage and medical benefits.

The supreme court discussed the difference between an arbitrary and capricious standard and a reasonably controverted standard in *Brown v. Texas-LA Cartage, Inc.*, 98-1063 (La. 12/1/98), 721 So.2d 885. The court explained that unreasonably controverting a claim requires action that is of a less egregious nature than that required for arbitrary and capricious behavior. "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Id*. at 890

8

(citing BLACK'S LAW DICTIONARY 104, 211 (6th ed. 1990)). The reasonably controverted standard requires the employer have some valid reason or evidence upon which to base its denial of benefits.

Obviously, the WCJ applied a stricter standard in determining that Vidalia Apparel owed penalties and attorney fees. Vidalia Apparel now seeks a de novo review under a more relaxed standard to determine whether Ms. Quinn was entitled to penalties and attorney fees.

In *Thomason v. Wal-Mart Stores, Inc.*, 37,520 (La.App. 2 Cir. 9/4/03), 852 So.2d 1283, *writ denied*, 03-2774 (La. 12/19/03), 861 So.2d 573, the WCJ also applied the heavier arbitrary and capricious standard when she should have applied the reasonably controverted standard. The court recognized that the WCJ had actually used a standard more forgiving to the employer.

We find that a de novo review of the assessment of penalties and attorney fees is not required under the circumstances of this case. Instead, we will review the evidence and testimony to determine whether the WCJ's decision to award penalties and attorney fees was clearly wrong. *Romero v. Garan's, Inc.*, 05-1297 (La.App. 3 Cir. 4/19/06), 929 So.2d 258.

In awarding penalties and attorney fees the WCJ stated:

This court is persuaded that claimant sought medical assistance from the company nurse, Rhonda Hunt, following the accident. Rhonda Hunt unilaterally decided claimant's claims were not "legitimate." Therefore, no report of injury was completed immediately following the injury.

Claimant was forced to take Family Medical Leave and to use her personal insurance to cover the medical expenses incurred for her back injuries. Defendant cannot be allowed to reject her desire to report a workers' compensation injury and then decide to shield themselves from liability through that rejection.

A simple investigation of claimant's contentions would have yielded the statements of Juanita Reed and Ava Wright - two witnesses that supported claimant's contentions. An investigation of claimant's

9

medical treatment, when compared to her pre-injury work performance, would have yielded findings of an employee, able to perform her job duties, until the occurrence of the accident in question.

As previously discussed, there is sufficient evidence in the record to support Ms. Quinn's claim that she had an accident which she reported to both her supervisor and the company nurse. Later, when she filed a request for leave due to back problems, the human resources manager did not bother inquiring if this was a work-related issue even though she knew that Ms. Quinn's job required her to constantly lift boxes, some weighing fifty to seventy pounds. Even after Ms. Quinn filed her claim for benefits in November 2006, there was no evidence that Vidalia Apparel investigated the accident at that point. We find that Vidalia Apparel did not reasonably controvert Ms. Quinn's claim, so the WCJ appropriately awarded penalties and attorney fees.

## TEMPORARY TOTAL DISABILITY

Vidalia Apparel assigns as error the WCJ's finding that Ms. Quinn was temporarily and totally disabled. In brief to this court, Ms. Quinn acknowledges that she is not entitled to temporary total disability (TTD) benefits for the days or weeks she worked in February, March, and April 2006 as set forth by Vidalia Apparel in its brief. According to Vidalia Apparel's brief, Ms. Quinn worked from February 1, 2006 to February 11, 2006; February 19, 2006 to April 1, 2006; April 9, 2006; and April 16, 2006 to April 23, 2006, her last day of work. Ms. Quinn is not entitled to TTD benefits during these time periods, so the judgment will be amended accordingly.

A WCJ's finding regarding a claimant's disability is a factual finding that is entitled to great weight and should not be overturned absent manifest error. *Winford v. Conerly Corp.*, 04-1278 (La. 3/11/05), 897 So.2d 560; *Burns v. Interstate Brands*

10

*Corp.*, 09-705 (La.App. 3 Cir. 2/3/10), 30 So.3d 271. An employee who is not employed is entitled to TTD benefits if the employee proves by clear and convincing evidence that she is unable to engage in any employment or self-employment. La.R.S. 23:1221(1)(c).

Vidalia Apparel argues that Ms. Quinn offered no testimony as to her pain, physical capabilities, or abilities to work. It also argues that there is no medical evidence concerning her work restrictions after she left Dr. Haimson's care on June 15, 2006.

In July 2006, Dr. Haimson transferred the medical care of Ms. Quinn to Dr. Feldman. At Ms. Quinn's visit with Dr. Feldman on August 10, 2006, she complained of pain in her lower back for six months. She related that she had been unable to work for three months, so at the time of her initial visit, she was not working. Dr. Feldman observed the disc herniation at L5-S1 on the March 2006 MRI. Ms. Quinn complained that all physical activities aggravated her pain. Dr. Feldman did not indicate that Ms. Quinn was able to work at this visit and noted that her inability to work was causing some depression. After her surgery on August 23, 2006, Ms. Quinn was restricted from heavy lifting, bending, or stooping. On September 5, 2006, Ms. Quinn reported that her pain was moderate to severe and interferes with most daily activities. On October 23, 2006, Ms. Quinn advised that her functional impairment was severe and continued to interfere with most of her daily activities. An MRI revealed that she had a large, left lateral disc herniation at L5-S1 where her surgery was previously performed. As previously recited in the factual section of this case, Ms. Quinn continued to receive epidural blocks after her surgery as she continued to suffer with pain. When Dr. Feldman last saw Ms. Quinn on June 30, 2007, her pain was severe. The plan at that time was to schedule another

11

epidural block, and the possibility of another surgical procedure was discussed.

At the time of trial, Ms. Quinn testified that she had been on social security disability for close to two years. There is no doubt that, at the time of trial, Ms. Quinn continued to suffer pain which clearly affected her ability to work. When she first started seeing Dr. Feldman, she was not working, so there was no need for Dr. Feldman to restrict her work duties. He continued to state in his office notes that she was to continue on the current plan. We find no manifest error in the WCJ's determination that Ms. Quinn is temporarily totally disabled.

## COMPENSATION RATE

Vidalia Apparel argues that the WCJ committed error when she found that the Ms. Quinn had a compensation rate of $454.00 per week. It claims that the proper rate should have been $385.37.

In her brief to this court, Ms. Quinn agrees that the proper compensation rate should be $385.37 per week. Therefore, we will amend the judgment accordingly.

## EMPLOYER FRAUD

In her answer to the appeal, Ms. Quinn has alleged that the WCJ erred in failing to find employer fraud under La.R.S. 23:1208. Louisiana Revised Statutes 23:1208(A) and (B) provide:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> B. It shall be unlawful for any person, whether present or absent, directly or indirectly, to aid and abet an employer or claimant, or directly or indirectly, counsel an employer or claimant to willfully make a false statement or representation.

Ms. Quinn alleges that Vidalia Apparel, through its agents, intentionally failed to record the injury reported by Ms. Quinn in order to defeat her workers'

12

compensation claim.

A WCJ's finding as to whether a violation of La.R.S. 23:1208 occurred is a finding of fact subject to the manifest error standard of review. *Chesne v. Elevated Tank Applicators, Inc.*, 04-46 (La.App. 3 Cir. 5/12/04), 874 So.2d 333, *writ denied*, 04-1439 (La. 9/24/04), 882 So.2d 1141.

All personnel responsible for recording and investigating a workplace accident denied, or could not remember, that Ms. Quinn ever reported an accident to them. While Ms. Quinn alleges that there is a working scheme at Vidalia Apparel to deny a workplace injury whenever possible, there is no evidence in the record supporting this allegation. Ms. Quinn's attorney argued that there other employees to back up this allegation, but no testimony or evidence was offered in support.

We find the WCJ did not err in failing to find that Vidalia Apparel violated La.R.S. 23:1208 as there was not sufficient evidence or testimony to support a violation.

**ATTORNEY FEES**

Ms. Quinn was awarded $10,000.00 for the work performed by her counsel at the trial level. In her answer, Ms. Quinn asks that the attorney fees be modified to a reasonable award based on time and efforts at trial. She also asks for an additional award of attorney fees for work performed in handling this appeal.

There are several factors to be considered when determining the amount of attorney fees to be awarded in a workers' compensation case which include "the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, and the amount of time the attorney devoted to the case." *Langley v. Petro Star Corp. of La.*, 01-198, p. 11 (La. 6/29/01), 792 So.2d 721, 727 (citing *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773

13

So.2d 694).

Counsel for Ms. Quinn submitted detailed time records to the court which indicated that he had ninety-seven hours of work in this case. Considering the above factors, we find that the attorney fee award of $10,000.00 is not so abusively low as to be manifestly erroneous.

We further find that an award of $3,500.00 is appropriate for the work done on this appeal.

For the foregoing reasons, the judgment of the Office of Workers' Compensation is amended to provide that Ms. Quinn is not entitled to workers' compensation benefits during the following periods when she worked: February 1, 2006 to February 11, 2006; February 19, 2006 to April 1, 2006; April 9, 2006; and April 16, 2006 to April 23, 2006. The judgment is further amended to provide that Ms. Quinn's proper compensation rate should be $385.37 per week. We also grant an additional $3,500.00 in attorney fees for work provided for this appeal. Costs of this appeal are assessed to Vidalia Apparel.

**AFFIRMED AS AMENDED.**