GARRETT, J.
Euckle Hunter, Jr., the claimant in this workers' compensation case, appeals from a judgment which denied the fraud claim he made against his employer, the Town of Richwood ("the Town"), under La. R.S. 23:1208. Hunter contended that, after he filed suit against the third party who injured him, the Town filed an intervention in that suit and improperly sought to recover penalties and attorney fees assessed against it in Hunter's workers' compensation case by "mislabeling" these payments as "temporary total disability." We affirm the judgment below.
FACTS
Hunter was employed by the Town as chief of police. On August 4, 2014, he was injured in an auto accident while driving his police car. As a result of the accident, Hunter filed both a workers' compensation claim against the Town and a tort suit against the other driver.
Hunter prevailed in the workers' compensation matter. On December 14, 2016, a judgment awarding him temporary total disability indemnity benefits was signed. This judgment also granted him $ 300 for reimbursement for emergency room treatment, $ 123.65 for prescription reimbursement, $ 2,000 in penalties, $ 2,750 in attorney fees, $ 1,000 for cost of a deposition, and $ 164.75 for court costs.[1] In payment of this judgment, the Louisiana Municipal Risk Management Agency issued to Hunter and his attorney a check for $ 6,377.77, dated January 30, 2017. The check stub recited the following: "Payment Type: Temporary Total Disability. Comments: Pursuant to OWC [Office of Workers' Compensation] Judgment."
Payment of this check was entered into the extensive payment history of Hunter's claims kept by the adjuster. That one-line entry - which is the centerpiece of the *562 instant appeal - had the following information set forth in eight columns: serial number ("582175"), payment type ("Temporary Total Disability"), paid to ("Euckle Hunter and his attorney, C. Daniel Street"), service date ("8/4/2014-8/4/2014"), billed ("$ 6,377.77"), paid ("$ 6,377.77"), "Aprvd" ("Yes"), and status ("1/30/2017, Ck #365970").
Hunter's tort suit against the other driver was filed on August 7, 2015. On September 11, 2015, the Town filed an intervention in the tort suit, seeking to recover sums it paid and continued to pay on Hunter's workers' compensation claim, pursuant to La. R.S. 23:1102. During the course of discovery, counsel for Hunter and the Town exchanged letters and emails. In January 2017, Hunter's counsel requested that the Town provide him with "a print-out of medical [and] indemnity paid" to provide to the tort defendants to see if they wanted to settle. On March 1, 2017, Hunter's counsel wrote again, enclosing a request for production of a "[c]omputer printout or other documentation of all workers' compensation indemnity and medical payments" made in conjunction with the accident and "[i]f different from the amount shown in the documents requested in Request for Production No. 1 above, provide any other documents which reveal the amount of your intervention herein."
On March 2, 2017, the Town's attorney emailed Hunter's personnel file from the Town and some of his workers' compensation records.[2] The email noted that more workers' compensation records would be forthcoming from Baton Rouge. In April 2017, the Town's counsel sent Hunter's counsel a CD with the entire workers' compensation file, which was voluminous.
On May 23, 2017, Hunter's counsel wrote the Town's counsel, informing him of a $ 450,000 offer from the tort defendant to settle all claims and offering the Town $ 50,000. On June 1, 2017, the Town's counsel mailed and faxed Hunter's counsel a letter rejecting the $ 50,000 settlement offer. On June 2, 2017, Hunter's counsel sent the Town's counsel a letter containing, in pertinent part, the following:
As usual, your client is off to a great start on trying to resolve this matter. On the very first page of your record of payments, which you apparently included in the gross amount paid, is an entry for a payment of temporary, total disability in the amount of $ 6,377.77. That was not for temporary, total disability but was for penalties and attorney fees. The mislabeling of that payment violates La. R.S. 23:1201F(5). Furthermore, that mislabeling is arguable [sic] workers' comp fraud because it is designed to facilitate recovery of that amount as compensation when it is not recoverable compensation. In view of this deception, I will now have to closely examine all entries to try to discover anymore [sic] such misconduct. Of course, such mislabeling makes that a challenge.
On June 16, 2017, the Town's counsel responded, in relevant part:
My previous letter of June 1, 2017, respectfully declining your offer to settle this matter for $ 50,000, sets forth that my client [is] in this for a total of $ 157,521.62. Nowhere in my letter does it state that my client should or could be reimbursed for that amount and there *563 was no counter offer made. There was merely a note as to how much money my client has invested in this matter and a respectful declination of your offer.
La. Stat. Ann. § 23:1201(5) sets forth: No amount paid as a penalty or attorney fee under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance . No formula was utilized to claim an amount for reimbursement. Thus, there is no fraud and no mislabeling of payments. [Emphasis theirs.]
As you probably know all of the above, and in order to clarify, you sent another letter dated June 14, 2017, inquiring as to how much my client claims is reimbursable in this matter. In that respect, my client has gone through the numbers and tentatively shows as follows:
The $ 6,377.77 judgment payment is payable under indemnity because there is NO category for payments other than: indemnity, medical, other, rehab and legal.
The payment covered:
$ 300.00 for Glenwood Regional.
$ 123.65 for prescription reimbursement.
$ 1k for Dr. Brown's deposition.
$ 2k penalties.
$ 2,750.00 attorney fees.
$ 164.75 cost.
$ 39.37 interest.
There is no mislabeling of this payment and there is clearly no intention of defrauding anyone.
With that stated, my client has paid $ 109,244.35 in medical benefits, $ 6,558.07 in rehab, $ 42,806.20 in indemnity (minus the $ 2k penalty, $ 2,750.00 attorney fee and $ 39.37 interest) = $ 38,016.83. The cost of $ 164.75 and Dr. Brown's depo fee of $ 1k [sic]. That amount comes to $ 153,819.25. Since Dr. Brown's deposition and medical records were used in the tort case to show the extent of Mr. Hunter's medical issues, that should be recoverable.
On June 23, 2017, Hunter's counsel sent another letter to the Town's counsel, which stated, in relevant part:
This is my last effort to try to amicably resolve this matter with you and your client. We will pay your client $ 100,000.00 for its intervention and compute the credit to which your client will be entitled. If we are unable to agree on the credit, we can submit that issue to the judge.
If this offer is not accepted by your client by next Friday, and consent to settle the claim withheld, we will pay the amount your clients claim into the registry of the court and litigate your entitlement and litigate the issue of whether or not your client has forfeited its claim by violation of La. R.S. 23:1208.
On July 18, 2017, Hunter filed a disputed claim for compensation with the OWC in which he asserted that the Town violated La. R.S. 23:1208. He stated that, during discovery and in the course of settlement discussions in his tort suit, his attorney repeatedly requested information on the indemnity and medical payments made under workers' compensation and the amount being sought in the intervention in the tort case. Counsel for the Town sent a document entitled "Claim Detail," portions of which were redacted. An entry found in this document stated that "temporary total disability" in the amount of $ 6,377.77 was paid to Hunter and his attorney. According to Hunter, this amount included penalties of $ 2,000 and attorney fees of $ 2,750 which the Town "disguised" as "temporary, total disability" and "presented same *564 as subject to reimbursement." Hunter argued that this "falsehood" was a misrepresentation in violation of La. R.S. 23:1208, "as Intervenor obviously presented this false information in an effort to recover same." He alleged that the Town was "guilty of workers' compensation fraud" and this should result in forfeiture of any claim it had, including as intervenor in the tort suit.
On August 28, 2017, the Town and the Office of Risk Management, Inc.,[3] filed an answer in which they repeatedly asserted the following two statements:
Nowhere can it be showed that defendant(s) alleged they were entitled to more than the lawful amount. Defendant(s) never submitted an amount to which they were entitled because the amount was not known until recently, when all invoices were submitted to defendants and paid by defendants.
Nowhere can it be shown that defendant(s) alleged that it was entitled to recover amounts it paid as penalties and attorney fees.
Trial before the workers' compensation judge ("WCJ") was held on May 18, 2018. The parties jointly introduced numerous documents,[4] including the judgments in the workers' compensation case, pleadings in the tort case, and correspondence between the attorneys. The Town also introduced, without objection, additional letters between counsel and answers to interrogatories.
Before trial commenced, the parties and the WCJ discussed several issues.[5] During the course of these discussions, Hunter's counsel stated that the Town "finally made an offer yesterday and I responded to it, but we're a few thousand dollars apart." Later, the Town's counsel stated that the comment about it "finally" making an offer was "perfectly on point." He asserted that, because the Town was still paying benefits to Hunter until several months before the trial, they had been unable to make an offer. He further explained that "without knowing what is out there and what's still coming in, we can't make an offer. All we can do is show them what we've paid[.]"
The sole witness at trial was Della Hildebrand, a workers' compensation adjuster who had worked for Risk Management, Inc., for 23 years. She handled both the workers' compensation case and the intervention in the tort suit. Hildebrand testified that she redacted the confidential information pertaining to reserves and legal fees, and that "[e]verything else is discoverable."[6] She explained that the entire *565 payment of the judgment, including penalties and attorney fees, was listed as "temporary total disability" because there were only five categories (indemnity/comp, medical, other, rehab, and legal) provided for issuing checks under their computer software and that judgments are paid under the indemnity category. Hildebrand stated that she sent the "Payment Itemization" document to the Town's attorney several times during the course of the claim process when he requested a current printout of the payment history. She testified that she did not know that the document was going to be presented to Hunter's counsel. She first learned that it had been provided when Hunter filed his claim asserting fraud.
Hildebrand stated that she never thought to tell the Town's attorney that the "temporary total disability" label included the penalties and attorney fees in the $ 6,377.77 check. She believed the check spoke for itself and noted that the comment associated with the check specified that it was issued pursuant to an OWC judgment. She denied that she was trying to defraud or mislead Hunter, hide anything from him, or gain an advantage. Hildebrand also testified that, when she would have been asked what she thought was owed for recovery, the amounts for the penalties and attorney fees would have come out of that total. She explained that, when required to provide the amount for a reimbursement claim, she manually reviewed the material. She stated that, at some point, she had sent an email to the Town's attorney based on her manual review of the various items for the reimbursement claim, as she did on all third-party claims. She acknowledged that, in addition to penalties and attorney fees, she would manually eliminate other items, such as interest and fees for vocational rehabilitation, case management and utilization review. Finally, she testified that she never said they wanted to be reimbursed for the penalties and attorney fees.
On July 6, 2018, the WCJ issued a written opinion, finding in the Town's favor. The WCJ cited Hildebrand's testimony that her company's computer software required her to classify a payment in one of five categories in order to issue a check. To issue the check for the OWC judgment in question, Hildebrand entered the payment under the indemnity category, as she had done for 20 years. She had no way to classify the check as payment for items such as penalties and attorney fees included in the OWC judgment. The WCJ stated that fraud under La. R.S. 23:1208 required: (1) an intentionally false statement (2) made for the purpose of obtaining or defeating any workers' compensation benefit or payment. The WCJ concluded that, while the Town "may have provided false or misleading information on [its] payment itemization, by classifying the entire amount as wage benefits, it was not proven that this information (i.e. false statement) was given for the purpose of obtaining or defeating any workers' compensation benefit or payment." Consequently, Hunter's fraud claim was dismissed at his cost. Judgment was signed that same day.
Hunter appealed.
LAW
In relevant part, La. R.S. 23:1208 provides:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
Under La. R.S. 23:1208, a civil penalty may be imposed if the following requirements are proved: (1) there is a false *566 statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co. , 94-2708 (La. 9/5/95), 660 So.2d 7 ; Louisiana Workers' Comp. Corp. v. Gray , 35,198 (La. App. 2 Cir. 10/31/01), 799 So.2d 820. All three requirements must be present before a penalty will be imposed. Wilkes v. Ivan Smith Furniture Co. , 39,096 (La. App. 2 Cir. 12/22/04), 890 So.2d 780 ; Louisiana Workers' Comp. Corp. v. Gray , supra .
The statute prohibits willful misrepresentations made by anyone "for the purpose of obtaining or defeating any benefit or payment." Thus, an employer may also be found to have violated this statute where misrepresentations are made for the purpose of defeating an employee's claim for workers' compensation benefits. Hull v. Fluker Farms , 2000-0757 (La. App. 1 Cir. 5/11/01), 787 So.2d 535, writ denied , 01-2291 (La. 11/16/01), 802 So.2d 612. See also CENLA Steel Erectors v. McDonald , 98-1355 (La. App. 3 Cir. 3/3/99), 737 So.2d 82, writ denied , 99-0940 (La. 5/14/99), 741 So.2d 669.
The issue of whether an employer, or his agent, willfully made a false statement or representation for the purpose of defeating benefits is one of fact, which is not to be reversed on appeal absent manifest error. Millender v. BASF Corp. , 2013-2253 (La. App. 1 Cir. 12/23/14), 168 So.3d 649. A WCJ's finding as to whether a violation of La. R.S. 23:1208 occurred is a finding of fact subject to the manifest error standard of review. Quinn v. Vidalia Apparel , 2010-712 (La. App. 3 Cir. 12/8/10), 54 So.3d 123.
In applying the manifest error or clearly wrong standard, the court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through Dep't of Trans. & Dev. , 617 So.2d 880 (La. 1993). Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Johnson v. Manitowoc Co. , 52,264 (La. App. 2 Cir. 9/26/18), 256 So.3d 463, writ denied , 18-1759 (La. 1/8/19), 260 So.3d 592.
An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. Green v. Allied Bldg. Stores, Inc. , 50,117 (La. App. 2 Cir. 1/22/16), 185 So.3d 164, writ denied , 16-0508 (La. 5/27/16), 192 So.3d 737.
DISCUSSION
The essence of Hunter's argument on appeal is that Hildebrand failed to redact the $ 6,377.77 payment, or make "some kind of notation or adjustment" on the P-6 printout to alert him to the contents of that check. He claims that her actions in redacting the reserves shown on P-5 and the legal costs itemized on P-6 are proof that her failure to somehow alter the entry for the check was "willful." However, we note that all of the items blacked out by Hildebrand in these documents were confidential and not discoverable; thus, they were properly redacted. Furthermore, we find the argument that the Town was trying to "disguise" the penalties and attorney fees in the $ 6,377.77 check is somewhat disingenuous given the fact that the check was made out to both Hunter and his attorney, who has represented him throughout all of these proceedings, signed the underlying judgment approving it as to form, and presumably was aware of exactly what the check included.
Hunter's counsel requested first a printout of the workers' compensation indemnity and medical payments made to his client and later the amount of the intervention, *567 if different. As to the printout supplied by the Town, the WCJ accepted Hildebrand's testimony that she operated within the bounds of her software and company policy in making her computer entry pertaining to the $ 6,377.77 check. Hildebrand further testified that she was aware that attorney fees and penalties were not recoverable in the intervention and that she would - and, in fact, did - manually calculate what would be recoverable and communicate that information to the Town's attorney. As Hildebrand indicated in her testimony, making that determination could not change the content of the actual printout - an internal, computer-generated document - which was requested by and supplied to Hunter.
As shown in the discussion held on the record between the attorneys and the WCJ immediately before the trial, the Town never made "an offer" as to the amount owed in the intervention until the day before the trial; it was not in a position to do so because it was still paying benefits to Hunter until shortly before the trial.
Based on the foregoing, we find no manifest error in the WCJ's dismissal of Hunter's fraud claim under La. R.S. 23:1208. The evidence presented at trial failed to establish all of the necessary elements required under that statute. Accordingly, the judgment of the WCJ is affirmed. As a result, we need not address the issue of what remedy is available in cases where fraud by an employer has been proven in the context of an intervention claim.
CONCLUSION
The judgment of the WCJ in favor of the Town of Richwood is affirmed. Costs of this appeal are assessed to the appellant, Euckle Hunter, Jr.
AFFIRMED.
APPLICATION FOR REHEARING
Before Jeanette Giddens Garrett - Writing, Jeff Cox, James Mark Stephens, Jay Bowen McCallum, and E. Joseph Bleich.
Rehearing denied.

On February 12, 2017, an amended judgment was signed which corrected a typographical error concerning the amount of the temporary total disability indemnity benefits. It also lowered the court costs to $ 134.75. In all other respects, the judgments are the same.
Both judgments provided for legal interest from date of judicial demand until paid on the medical treatment and prescription items, as well as legal interest on the penalties and attorney fees from the date of signing of the judgment.

This email and most of these workers' compensation documents were admitted at trial as P-5. The last six pages of the workers' compensation records, which consisted of the payment history of Hunter's claim, were admitted as P-6. The first page of P-6 is entitled "Payment Itemization"; the entry pertaining to the $ 6,377.77 check is the seventh entry on this page.

In its disputed claim for compensation, Hunter listed "Office of Risk Management, Inc." as the Town's insurer/administrator. In the answer, the defendants stated that the name of the entity is actually the Louisiana Municipal Risk Management Association ("LMRMA"). They then asserted an exception of no right of action, seeking LMRMA's dismissal on the basis that it was not an insurer and, as such, was not subject to any sort of direct action. The record does not indicate what action was taken on the exception.

Although the first 14 exhibits were ultimately introduced jointly, they are marked on their face as plaintiff's exhibits. In this opinion, we refer to them according to the markings on the actual documents.

They also discussed the Moody fee, which was to be determined at a later date by the district court in the tort case. The Moody fee, which derives its name from Moody v. Arabie , 498 So.2d 1081 (La. 1986), and is codified in La. R.S. 23:1103(C)(1), represents the proportionate share of an employee's attorney fees that is paid by the employer when the employer intervenes in the employee's third party tort suit. Kenly v. Fuller , 46,398 (La. App. 2 Cir. 7/13/11), 69 So.3d 1285, writ denied , 11-1784 (La. 11/4/11), 75 So.3d 924.

Review of the exhibits shows that the only items redacted in P-5 pertained to reserves and the only items redacted in P-6 were described under the "Payment Type" column as "Legal Cost."