CARTER, C.J.
^Claimant, Darrin Smith, appeals a determination of the Office of Workers’ Compensation (OWC) that lumbar surgery was not reasonable or medically necessary. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

Darrin Smith was involved in a motor vehicle accident on Highway 25 in Folsom, Louisiana, on April 24, 2007, while in the course and scope of his employment with Lafarge North America, L.L.C. (Lafarge). Smith was driving a ready-mix cement truck, which flipped several times after Smith attempted to avoid colliding with a vehicle merging into his lane of travel. Smith was extracted from the cement truck, which came to rest upside down in a ditch, and air-lifted to St. Tammany Hospital for treatment. Following the accident, Smith’s employer, Lafarge, paid and continues to pay medical and indemnity bene *381 fits to Smith.[1]
Despite medical treatment following the April 24, 2007 accident, Smith continued to complain of constant pain in his neck, shoulder, and back. Smith’s treating physician, neurosurgeon Dr. Bradley Bartholomew, recommended Smith undergo lumber surgery, specifically, a percutaneous discectomy.[2] Lafarge requested a second medical opinion (SMO) from neurosurgeon Dr. Najeeb Thomas, who opined that Smith was not a candidate for lumbar surgery. The OWC appointed neurosurgeon Dr. James Tran to perform an independent medical examination (IME) due to the conflicting opinions concerning the reasonableness | sand necessity of the lumbar surgery. After the IME, Dr. Tran did not recommend Smith undergo lumbar surgery, but instead suggested that Smith receive radiofrequency ablation treatments [3] in his lumbar spine.
As a result, Smith filed a Disputed Claim for Compensation on May 12, 2010, seeking authorization for the percutaneous discectomy, as recommended by Dr. Bartholomew, his treating physician, as well as costs, penalties, and attorney’s fees.[4] La-farge filed an answer to Smith’s claim, denying the necessity of the surgery based on the recommendations of Dr. Thomas and Dr. Tran.
The dispute proceeded to trial and was heard before the OWC on October 17, 2011. The parties stipulated that the only issue before the OWC was whether Smith was entitled to undergo the lumbar surgery as recommended by Dr. Bartholomew. Following the submission of the parties’ post-trial briefs, the OWC took the case under advisement. On November 18, 2011, the court signed a written judgment, ruling that Smith carried his burden of proof that he suffered back injury as a result of the April 24, 2007 accident; however, Smith did not carry his burden of proving that the lumbar surgery recommended by Dr. Bartholomew was reasonable and medically necessary.
Smith now appeals.
| ¿DISCUSSION
The issue in this case is whether the workers’ compensation judge (WCJ) erred in giving more weight to the testimony of the evaluating physicians versus the *382 treating physician for the purpose of recommending lumbar surgery for Smith.
In workers’ compensation cases, the appropriate standard of review to be applied by appellate courts is the manifest error-elearly wrong standard. Dawson v. Terrebonne General Medical Center, 2010-2130 (La.App. 1 Cir. 5/19/11), 69 So.3d 622, 626. For an appellate court to reverse a WCJ’s factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the WCJ and that the record establishes that the finding is clearly wrong. Dawson, 69 So.3d at 626.
In workers’ compensation cases, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Dawson, 69 So.3d at 627. Even though an appellate court may feel its own evaluation and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Dawson, 69 So.3d at 627. Furthermore, where two permissible views of the evidence exist in a workers’ compensation case, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Dawson, 69 So.3d at 627.
When faced with the question of whether to accept the opinion of a non-treating physician specialist over the opinion of a treating physician specialist, this circuit has previously held that the trial court ultimately retains the discretion to weigh and consider such competing testimony, despite any applicable | ¿presumptions. Ponthier v. Vulcan Foundry, Inc., 95-1343 (La.App. 1 Cir. 2/23/96), 668 So.2d 1315, 1317-18.
Following the April 24, 2007 accident, Smith sought medical attention from his primary care physician, Dr. Charles Du-combs. Smith complained of head, shoulder, and lower back pain. Dr. Ducombs ordered a CT scan of Smith’s head and a lumbar MRI, which was performed on May 29, 2007. Due to the nature of Smith’s back injuries,[5] Dr. Ducombs referred Smith to Dr. Brett Chiasson, an orthopedic surgeon.
In June 2007, Smith saw Dr. Chiasson, who prescribed pain medication and physical therapy. Smith had additional followup appointments with Dr. Chiasson from July through November 2007. Dr. Chias-son consistently opined that Smith was not a candidate for lower lumber spine surgery. In November 2007, Dr. Chiasson recommended Smith make an appointment with neurosurgeon Dr. John Nyboer; however, on the recommendation of his attorney at the time, Smith first saw neurosurgeon Dr. Bradley Bartholomew on May 15, 2008. Based on Smith’s physical exam and a review of the MRI scans, Dr. Bartholomew recommended Smith receive cervical facet blocks to his spine.
Smith continued to complain of constant pain in his head, shoulders, and lower back. Dr. Bartholomew then recommended Smith undergo a lumbar disco-gram. After the results of the discogram revealed positive results in certain portions *383 of Smith’s spine, at an appointment in March 2009, Dr. Bartholomew | (¡offered Smith several lumbar surgical options, including a percutaneous discectomy.
On July 17, 2009, Smith was involved in a non-work related motor vehicle accident. Following the accident, Smith again visited Dr. Bartholomew. Smith averred the preexisting pain in his neck and back was intensified by the recent car accident. Dr. Bartholomew ordered Smith to undergo a second lumbar MRI, which was performed on August 18, 2009.[6] Dr. Bartholomew reviewed the films and noted no evidence of disc herniations, no spinal stenosis, and no narrowing of the spinal canal. Dr. Bartholomew continued to offer to perform a percutaneous discectomy on Smith’s lumbar spine.
At Lafarge’s request for a SMO, Smith was examined by neurosurgeon Dr. Thomas on September 22, 2009.[7] Dr. Thomas reviewed Smith’s 2007 and 2009 MRI films, noting that Smith’s films were fairly normal and that he suffered from degenerative disc disease in his cervical and lumber spine. Dr. Thomas indicated that Smith suffered cervical and lumbar strains from his injuries, but at the time of his examination, Smith was at maximum medical improvement. Dr. Thomas opined Smith was not a surgical candidate.
Because of conflicting medical opinions regarding the reasonableness and necessity of Smith’s lumbar surgery, the OWC appointed Dr. Tran to perform the IME. On April 12, 2010, Dr. Tran examined Smith. He opined that Smith was a candidate for radiofrequency treatment in his lumbar spine; however, Dr. Tran did not recommend Smith undergo the lumbar surgery as offered to Smith by his treating physician, Dr. Bartholomew.
|7On April 21, 2010, Smith tripped and fell over a hose as he was clocking in for work at Lafarge. Following this accident, Smith attended numerous physical therapy appointments[8] and continued to complain of constant lower back, shoulder, and neck pain, and problems walking, standing, sitting, climbing, and dressing. A third lumbar MRI was performed on April 29, 2010. The MRI showed no disc herniations or spinal canal stenosis.
While the physicians did not testify at the October 17, 2011 trial, their respective medical records pertaining to Smith were introduced. Based on their physical examinations of Smith and a review of Smith’s medical history and records, Dr.' Thomas and Dr. Tran opined that surgical intervention was not warranted for Smith, specifically, the percutaneous discectomy recommended by Dr. Bartholomew. Although the physicians were qualified to give an opinion as to the nature and treatment of Smith’s injury, the WCJ had the discretion to evaluate all of the testimony and to determine which physician’s opinion was most credible. This determination cannot be disturbed unless found to be manifestly erroneous. Dawson, 69 So.3d at-627-628.
The WCJ balanced Dr. Bartholomew’s opinion, as Smith’s treating physician, against the opinions of the evaluating physicians, Dr. Thomas and Dr. Tran. Based *384 on the evidence presented in this case, we find the WCJ did not abuse her discretion in refusing to give Dr. Bartholomew’s opinion greater weight than the opinions of the other physicians who examined Smith. Consequently, we conclude that the WCJ did not err in denying Smith’s request for lumbar surgery.
[ ¡¡CONCLUSION
For the foregoing reasons, the judgment of the OWC in favor of Lafarge North America, L.L.C. is affirmed. All costs of this appeal are assessed against the claimant, Darrin Smith.
AFFIRMED.

. Additionally, there is a tort suit regarding Smith's April 24.2007 accident pending in the Twenty-Second Judicial District Court in St. Tammany Parish, Louisiana.

. A percutaneous discectomy, also spelled “diskectomy,” refers to the medical procedure whereby an intervertebral disc, or "disk,” is removed, in whole or in part. "Percutaneous” indicates that the procedure is performed through the skin. The procedure is generally performed to unpinch, or decompress, a nerve and/or the spinal cord. See Ida G. Dox, Gilbert M. Eisner, June L. Melloni & B. John Melloni, Attorney’s Illustrated Medical Dictionary D38, P20 (West 1997).

. Radiofrequency ablation treatment refers to the removal or eradication of nerve tissue using the frequency of electromagnetic radiation, in the range between audio frequencies and infrared frequencies. When directed at the lumbar spine, the radiofrequency treatment can minimize pain and irritation in the facet joints. See Dox, Attorney’s Illustrated Medical Dictionaty at A2, R2.

.Smith filed an Amended Disputed Claim for Compensation on July 29, 2011, requesting (1) a change in orthopedic physician because at that time, Smith believed his orthopedic surgeon, Dr. Brett Chiasson, no longer took workers' compensation patients; and (2) a change in pain management doctor from Dr. Mohamed Elkersh to Dr. Sandra Weitz. Smith filed a Second Amended Disputed Claim for Compensation on September 20, 2011, amending Section 15(c) to add the following issues; (1) failure to pay bills timely; and (2) penalties and attorney's fees.

. The results of the MRI, performed at Premier MRI 4 U, indicated that Smith’s lumbar spine had normal alignment, vertebral body height, and marrow signal. Smith suffered from an L2-3 mild circumferential bulge with mild right neural foraminal narrowing, an L3-4 mild circumferential bulge with mild left neural foraminal narrowing, a circumferential disc bulge at L4-5 with mild bilateral neural foraminal narrowing and anterior the-cal sac deformity with no evidence of spinal canal stenosis, and a circumferential disc bulge of L5-S1 with mild right neural forami-nal narrowing.

.The results of the MRI indicated that Smith's lumbar spine had mild degenerative changes. There was mild foraminal narrowing at L3-4 and L4-5 secondary to disc bulging and facet disease; no spinal stenosis; no evidence for disc herniations.

. Dr. Thomas saw Smith again on July 6, 2010. Dr. Thomas reiterated his assessment that Smith was not a surgical candidate.

. Smith attended physical therapy at Anato-mix Physical Therapy on April 30, 2010, May 4.2010, May 5, 2010, May 7, 2010, May 12, 2010, and June 21, 2010.