PETTIGREW, J.
12This is an appeal from a workers’ compensation dispute wherein the workers’ compensation judge (“WCJ”) found that claimant failed to carry her burden of proof that her work-related accident aggravated a preexisting lumbar condition, caused injury to her knee, or aggravated her mental condition. From a dismissal of her claim with prejudice, claimant has appealed. We affirm.
Claimant, Sheila Vicknair, was employed as a cashier at Wal-Mart Stores, Inc. (“Wal-Mart”) when she tripped and fell in the parking tot on August 23, 2007. The accident was witnessed by a co-worker and is not in dispute.
Following this accident, Ms. Vicknair, then a 50-year old obese[1] female with a history of lower back complaints, sought treatment from her general practice physician, Dr. Adrian Talbot. Dr. Talbot later referred her to an orthopedist, Dr. Paul M. Doty. On her initial visit to Dr. Doty, on September 21, 2007, Ms. Vicknair expressed complaints referable to her back, her right wrist, and her right knee. Ms. Vicknair also expressed complaints, following the accident, about her inability to always extend the long finger of her left hand. Dr. Doty’s impression, based upon his physical examination, was that Ms. Vicknair suffered from a triggering of her left long finger, back pain subsequent to falling, and a sprain of her right wrist from catching herself as she fell.
Dr. Doty treated her conservatively with a steroid injection and medications. According to Dr. Doty, Ms. Vicknair’s wrist, knee, and back complaints improved; but on November 21, 2007, Dr. Doty performed an outpatient procedure known as a trigger finger release at Lakeview Regional Medical Center. In a follow-up visit on February 1, 2008, Ms. Vicknair expressed complaints of back pain, as well as a new complaint of pain in her left knee.
Ms. Vicknair fell again, at her home, on May 10, 2008, and sustained a lateral fracture of her right tibia. Ms. Vicknair claims that this subsequent fall was caused by the |sinjuries she sustained at Wal-Mart on August 23, 2007; i.e., that her right knee could no longer sustain her weight. Ms. Vicknair underwent emergency surgery performed by Dr. John L. Fambrough, an orthopedist, to repair her broken right tibia. Ms. Vicknair later underwent total knee replacement surgery, also performed by Dr. Fambrough, the following year. Ms. Vicknair admitted that she did not advise anyone affiliated *1067 with Wal-Mart about her knee replacement surgery.
Ms. Vicknair filed the instant claim for compensation with the Office of Workers’ Compensation on November 13, 2008, alleging injury to her knee, wrists, breast, and lower back. In connection with her claim for compensation, Ms. Vicknair alleged that as a result of her fall on August 23, 2007, Wal-Mart failed to provide medical treatment or pay her medical bills, for which she sought penalties, interest, and attorney fees. Wal-Mart responded by filing an answer, claiming that it reasonably and properly handled Ms. Vicknair’s workers’ compensation case, and further that Ms. Vicknair’s present complaints of injury were not sufficiently related to her earlier alleged accident at work.
On April 30, 2009, Ms. Vicknair filed an Amended and Supplemented Disputed Claim 1008 wherein she alleged that Wal-Mart unreasonably denied her medical treatment with a neurosurgeon, Dr. Dietze; a neurologist, Dr. Shamsnia; a psychologist, Dr. Boutte; and pain management treatment from her general practice physician, Dr. Talbot. Ms. Vicknair further asserted that Wal-Mart refused to approve steroid injections prescribed by her orthopedist, Dr. Doty, and sought penalties, interest, and attorney fees for Wal-Mart’s arbitrary and capricious termination of all medical treatment from ail of her treating physicians as of October 30, 2008.
Ms. Vicknair filed a Second Amended and Supplemented Disputed Claim 1008 on January 20, 2010, wherein she further alleged that Wal-Mart failed to authorize medical weight loss therapy recommended by the court-appointed independent medical examiner, Dr. Eric Oberlander. Ms. Vicknair also sought penalties, interest, and attorney fees for Wal-Mart’s failure to authorize medical treatment. In answering Ms. Vicknair’s second amended claim, Wal-Mart stated that it would not authorize treatment for weight loss as same was not causally related to Ms. Vicknair’s accident at work.
|4On August 24, 2010, Ms. Vicknair’s former attorney, C. Ray Murry, filed a Petition of Intervention in this matter, seeking to recover attorney fees for legal services rendered in the event this matter was settled or Ms. Vicknair obtained a favorable judgment.
The matter proceeded to trial on June 27, 2011, on the following issues:
1.) Whether Wal-Mart was reasonable in its failure to approve lumbar surgery as recommended by Dr. Dietze;
2.) Whether Wal-Mart was reasonable in its failure to pay outstanding medical expenses incurred as a result of leg and knee surgeries performed by Dr. Fambrough;
3.) Whether Wal-Mart was reasonable in its failure to timely authorize treatment with Ms. Vicknair’s choice of neurosurgeon, Dr. Donald Dietze;
4.) Whether Wal-Mart was reasonable in its failure to timely authorize mental health treatment;
5.) Whether Wal-Mart was reasonable in its failure to timely authorize an MRI and ESIs as recommended by Dr. Doty;
6.) Whether Wal-Mart was reasonable in its failure to timely authorize pain management;
7.) Whether Wal-Mart was reasonable in its failure to timely authorize weight loss/weight management treatment;
8.) Whether Wal-Mart was reasonable when it temporarily suspended Ms. Vicknair’s workers’ compensation benefits in October of 2008; and
*1068 9.) Whether Ms. Vicknair is entitled to penalties and attorney fees on all above-listed issues.
At the conclusion of the evidence, the matter was submitted to the workers’ compensation judge (“WCJ”) with post-trial briefs from the respective parties, due fifteen working days from the date of trial. An extension for briefs was granted, and the matter was taken under advisement on August 1, 2011. A judgment was due within 45 days.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882-83 (La. 1993).
In order for a claimant to be entitled to recover workers’ compensation benefits, he must prove, by a preponderance of the evidence, that a work-related accident occurred | sand that an injury was sustained. In certain events a worker’s testimony is sufficient to discharge the burden of proving an “accident,” provided that two elements are first satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the workers testimony is corroborated by the circumstances surrounding the alleged incident, Carter v. Lake view Regional Medical Center, 04-1794, p. 4 (La.App. 1 Cir. 9/23/05), 923 So.2d 686, 688. See also Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La. 1992).
Ms. Vicknair’s testimony at trial was not credible; and the overwhelming evidence presented by Wal-Mart, including numerous medical records, directly contradicted her trial testimony. Ms. Vicknair’s medical history documented lower back complaints prior to the accident, dating back at least to January 27, 2005. In this rare instance, the WCJ had the benefit of reviewing lumbar MRI scans obtained on June 20, 2006, prior to the accident, with those taken on August 31, 2007, shortly after the accident. It was the consensus of opinion from all three neurosurgical experts that these scans did not reveal any significant changes in the lumbar discs at issue.
In addition, Ms. Vicknair testified that she had a subsequent fall in May 2008, in which her right leg gave out. At trial, Ms. Vicknair denied any earlier falls in which her right leg gave out prior to the August 23, 2007 accident at Wal-Mart. On cross-examination, Ms. Vicknair was confronted with a January 27, 2005 record from Lallie Kemp Medical Center that gave a history of a fail in which her “Right leg gave out today.”
The medical record most damaging to Ms. Vicknair’s credibility was perhaps the “Medical Psychology Consulting Pain Questionnaire” contained in the records of Dr. John Boutte, Ms. Vicknair’s treating psychiatrist. This document, completed in connection with a pre-accident visit on April 18, 2006, noted that Ms. Vicknair had complaints of pain in her lower back and right leg that began about four years earlier. At the time, Ms. Vicknair attributed her complaints of pain to having fallen *1069 many times while earning a living stripping and buffing floors.
lfiIn addition to her complaints of chronic lower back pain, Ms. Vicknair also complained to her general practitioner, Dr. Talbot, of depression and the need for weight loss prior to the accident between September 5, 2005 and July 31, 2005.
Accordingly, the WCJ concluded in her judgment that “[claimant Sheila Vicknair did not carry her burden of proof that she suffered a work-related accident that aggravated a pre-existing lumbar condition, caused injury to her knee or aggravated her mental condition.”
After a thorough review of the record, we find no error in the findings of the WCJ. Accordingly, we affirm the decision of the WCJ and assess all costs associated with this appeal against the claimant, Sheila Vicknair.
AFFIRMED.

. In his deposition testimony, Ms. Vicknair’s treating physician Dr. Adrian Talbot noted that Ms Vicknair 5' 1" tall and weighed between 239 and 248 pounds.