DRAKE, J.
| ¡.Plaintiff-appellant, Kevin Todd Millen-der, appeals the judgment of the workers’ compensation judge (WCJ), in favor of BASF Corporation (BASF) and Zurich American Insurance Company (Zurich). We affirm the judgment of the WCJ.

FACTUAL AND PROCEDURAL HISTORY

It is undisputed that Millender sustained an injury to his left hand while in the course and scope of his employment with BASF on August 12, 2007.[1] On March 10, 2008, Millender filed a Disputed Claim for Compensation, which resulted in a consent judgment that was signed on May 6, 2009. On December 6, 2011, Millender filed another Disputed Claim for Compensation claiming indemnity benefits, authorization for medical treatment, and penalties and attorney’s fees. Millender amended his Disputed Claim for Compensation to request indemnity specifically for the period September 9, 2011, through November 17, 2011, as well as additional penalties and attorney’s fees.
A trial was held before the WCJ on July 3, 2013, and a written judgment was signed on July 25, 2013. The judgment contained fourteen findings. Millender appeals each finding, although he agrees with some of the WCJ’s findings. This court will address each of those findings.

STANDARD OF REVIEW

In workers’ compensation cases, the appropriate standard of review to be applied by appellate courts is the manifest *655 error-clearly wrong standard. Smith v. Lafarge North America, LLC, 12-0337 (La.App. 1 Cir. 11/2/12), 111 So.3d 379, 382; Dawson v. Terrebonne General Medical Center, 10-2130 (La.App. 1 Cir. 5/19/11), 69 So.3d 622, 626. To reverse a factual finding by a workers’ compensation judge, the appellate court must find from the record that a treasonable factual basis does not exist for the finding of the judge and that the record establishes that the finding is clearly wrong. Smith, 111 So.3d at 382; Dawson, 69 So.3d at 626. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one. Smith, 111 So.3d at 382; Dawson, 69 So.3d at 626. Where two permissible views of the evidence exist in a workers’ compensation case, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Smith, 111 So.3d at 382; Dawson, 69 So.3d at 627.

DISCUSSION

Date of Injury and Middle Finger Injury
The judgment states that Millender was injured on August 8, 2007. Millender claims the WCJ used the wrong date of injury. The record shows that the date of injury was August 12, 2007, and the parties stipulated to this as the date of injury on the day of trial. Thus, we will amend the judgment to the correct recited date of injury. See La. C.C.P. art. 2164.
The WCJ found that although Millender originally sustained an injury to his ring finger on his left hand, for which he underwent surgery for trigger finger, he did not carry his burden of proof that his complaints as to his middle finger on his left hand were related to the initial injury. Whether a claimant has carried his or her burden of proof and whether testimony is credible are questions of fact to be determined by the trier of fact. Allman v. Washington Parish Police Jury, 04-0600 (La.App. 1 Cir. 3/24/05), 907 So.2d 86, 88. A court of appeal may not set aside a hearing officer’s finding of fact in absence of “manifest error” or unless it is “clearly wrong.” McCray v. Delta Industries, Inc., 00-1694 (La.App. 1 Cir. 9/28/01), 809 So.2d 265, 269. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
In order for a claimant to be entitled to recover workers’ compensation benefits, he must prove, by a preponderance of the evidence, that a work-related accident occurred and that an injury was sustained. In certain events a worker’s testimony is sufficient to discharge the burden of proving an “accident,” provided that two elements are first satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident, and (2) the workers testimony is corroborated by the circumstances surrounding the alleged incident. Vicknair v. Wal-Mart Stores, Inc., 12-0011 (La.App. 1 Cir. 12/21/12), 111 So.3d 1065, 1068. See also Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992).
Generally, the effect and weight to be given medical expert testimony is within the broad discretion of the *656 factfinder. Yohn v. Brandon, 01-1896 (La.App. 1 Cir. 9/27/02), 835 So.2d 580, 584 wrrit denied, 02-2592 (La.12/13/02), 831 So.2d 989. A trier of fact may accept or reject, in whole or in part, the opinions expressed by an expert. See Harris v. State, Department of Transportation and Development, 07-1566 (La.App. 1 Cir. 11/10/08), 997 So.2d 849, 866, writ denied, 08-2886 (La.2/6/09), 999 So.2d 785. Further, where the testimony of expert witnesses differs, the trier of fact has great, even vast, discretion in determining the credibility of the evidence, and a finding in this regard will not be overturned unless it is clearly wrong. Cotton v. State Farm Mutual Automobile Insurance Company, 10-1609 (La.App. 1 Cir. 5/6/11), 65 So.3d 213, 220, writ denied, 11-1084 (La.9/2/11), 68 So.3d 522.
The evidence at trial regarding the middle finger injury consisted of the testimony of Millender and the depositions of Dr. Darryl Peterson, his treating physician, Dr. Michael Robichaux, the defendants’ choice of physician, and Dr. Robert Morrow, Jr., who performed an independent medical exam (IME) at the request of the court. The WCJ placed great weight on the testimony of Dr. Morrow, who found Millender’s complaints as to his middle finger to be unrelated to the accident. She also took into consideration the corroborating testimony of Dr. Robichaux that the middle finger complaints were unrelated to the accident. We find the WCJ’s findings are reasonable in light of the entirety of the record. Although Dr. Peterson may have testified that the middle finger complaints were related to the initial injury, there was a reasonable basis for the findings of the WCJ given the testimony of Dr. Morrow and Dr. Robi-chaux.
Reflex Sympathetic Dystrophy
Millender appeals the second finding claiming that the WCJ would only recognize his claim of reflex sympathetic dystrophy (RSD) at a reduced capacity of autonomic dysfunction. BASF and Zurich both respond that the WCJ correctly found that Millender suffered from autonomic dysfunction and not RSD. However, the judgment of the trial court states:
Kevin Todd Millender met his burden of proving he has Reflex Sympathetic Dystrophy and this condition is related to the accident in the course and scope of his employment with BASF on August [12], 2007.
Furthermore, in her oral reasons, the WCJ stated, “The Court is of the opinion that Mr. Millender had reflex sympathetic dystrophy and that it was related to the accident and injury that he sustained. This is supported by Dr. Peterson and Dr. Morrow, the state’s IME.” The WCJ explained that at the time Millender saw Dr. | fiMorrow, he was suffering only one symptom of RSD, but that the RSD could flare up. Therefore, the WCJ felt this was why Dr. Robichaux did not see signs of the RSD. However, the WCJ stated, “Dr. Morrow ... puts that issue to rest, as far as the Court is concerned.”
It is true that at the start of the trial, while the WCJ was determining what issues were to be determined, she requested whether Millender would agree that he had autonomic dysfunction, rather than RSD, as based on the IME of Dr. Morrow. Millender did not agree to the classification that his pain was caused by autonomic dysfunction rather than RSD, and the WCJ stated that she would decide the issue. It is clear from the judgment that she held that Millender did have RSD.
Appeals are taken from judgments, not the written reasons for judgment. See Davis v. Farm Fresh Food Supplier, 02-1401 (La.App. 1 Cir. 3/28/03), 844 So.2d 352, 353-54. Where there are *657 two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Stobart v. State, through Dept. of Transp. and Devel., 617 So.2d 880, 882 (La.1993). As the WCJ ruled in favor of Millender on the issue of RSD, this court finds no reason to overturn that ruling.
Termination of Indemnity Benefits
Millender does not appeal the finding of the trial court that he met his burden of proving Zurich was arbitrary and capricious in terminating his indemnity benefits between September 30, 2011, and November 17, 2011. Zurich did not answer the appeal but claimed the correct date the benefits were actually terminated were September 30, 2012, and November 17, 2012. However, Zurich’s own employee, Stan Braun, admitted by affidavit that the indemnity benefits to Millender were acci-dently not paid due to Zurich’s clerical error from September 30, 2011, to November 17, 2011. Since Millender did not appeal this issue, and |7Zurich did not answer the appeal to correct the dates as it claims them to be, pursuant to La. C.C.P. art. 2133, this issue is not before this court.
Assessment of Penalties and Attorney’s Fees
Millender claims that the trial court erred in assessing only $2000 in penalties for the delayed indemnity checks from September 30, 2011, to November 17, 2011. He asserts that each instance of a delayed check should have been assessed a penalty, rather than all the instances being grouped together. He also asserts that the adjuster taunted him when he did not receive the indemnity checks. The evidence in the record clearly shows that Millender was receiving $478 per week in indemnity benefits, which were discontinued from September 30, 2011, to November 17, 2011. The discontinuation was due to “a clerical error, specifically, that Mr. Millender was inadvertently taken out of Zurich’s computer system that generates weekly payments.” When the mistake was found, Zurich issued a payment, which represented the entirety of the amount owed between September 30, 2011, and November 17, 2011.
Indemnity payments are to be made pursuant to La. R.S. 23:1201, which states in pertinent part:
A. (1) Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident; however, when the employee is not living at the place where the wages were paid, or is absent therefrom, such payments shall be made by mail, upon the employee giving to the employer a sufficient mailing address. However, a longer interval, not to exceed one month, may be substituted by agreement without approval of the director. An interval of more than one month must be approved by the director.
[[Image here]]
F. Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is |swithheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dol *658 lars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
An employer cannot urge in its defense its own poor clerical work or administrative lapses to escape penalties for nonpayment of workers’ compensation benefits. Lafleur v. Alec Elec., 04-0003 (La.App. 1 Cir. 12/30/04), 898 So.2d 474, 480, writs denied, 05-0276, 05-0277 (La.4/8/05), 898 So.2d 1287, 1288 (citing Rollins v. Glitsch Field Services, Inc., 97-1404 (La.App. 3 Cir. 5/13/98), 713 So.2d 674, 678, writ denied 98-1590 (La.9/18/98), 724 So.2d 763). Based on the evidence in the record and the applicable law, we find no error in the WCJ’s finding that the delayed payment was not due to circumstances outside of Zurich’s control.
The next question is whether the amount of the penalty assessed by the WCJ is appropriate. Although a WCJ’s decision to impose penalties is a factual finding subject to the manifest error standard of review, a WCJ’s award of penalties and attorney fees, that is the actual amount awarded, is entitled to great discretion and will not be disturbed absent an abuse of discretion. Davis v. Boise Cascade Co., 14-156 (La.App. 3 Cir. 10/1/14), 149 So.3d 331, 339.
In the instant case, the WCJ heard testimony that a new adjuster took over Mil-lender’s case, and that for a period of about six weeks, there was a clerical error on the part of Zurich that resulted in the delayed indemnity benefits. As soon as the error was discovered, the indemnity benefits owed were paid in their entirety. The WCJ assessed one penalty because she determined that the delayed indemnity checks were due to one reason, the clerical error. This court has |3previously held that only one penalty is due for the failure to pay compensation benefits, rather than a separate penalty for each week compensation benefits remain unpaid. Juracovich v. St. Anne General Hosp., 04-1323 (La.App. 1 Cir. 6/10/05), 916 So.2d 264, 267, writ denied, 05-1819 (La.1/27/06), 922 So.2d 552; see also Ducote v. Louisiana Industries, Inc., 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843. Thus, we find that the WCJ did not abuse her discretion in awarding a single penalty assessment for the approximately six weeks of missed indemnity payments, and as such, we affirm the $2000 penalty assessed against the defendants.
Lack of Clarity of Documents
Millender claims that the WCJ erred in minimizing the evidence he was allowed to present at the trial, thereby hampering his case. He also claims that even though several documents were proffered, he was unable to present his entire case with clarity. Instead, he claims the WCJ was confused by the documents presented and was unable to determine that Millender was not paid all of his indemnity benefits. BASF and Zurich claim that this issue is not a proper issue for appeal.
Millender is appealing the inadmissibility of certain evidence, which, although he is not very specific, this court will address. The trial court is granted a broad range of discretion when ruling on the admissibility of evidence, and eviden-tiary rulings shall not be disturbed on appeal absent a clear abuse of that discretion. State, Dep’t of Transp. & Dev. v. Restructure Partners, L.L.C., 07-1745 (La. *659 App. 1 Cir. 3/26/08), 986 So.2d 212, 221, writ denied, 08-1269 (La.9/19/08), 992 So.2d 937 (citing Grayson v. R.B. Ammon and Associates, Inc., 99-2597 (La.App. 1 Cir. 11/3/00), 778 So.2d 1, 10, writs denied, 00-3270, 00-3311 (La.1/26/01), 782 So.2d 1026, 1027)
|inThe WCJ spent a great deal of the trial determining whether any indemnity benefits were owed Millender. After much discussion and review of documentation, Millender testified that three indemnity cheeks were owed to him from May 7, 2009, November 5, 2009, and October 6, 2010. It was determined by the evidence that the 2009 checks were reissued on two different occasions, on March 12, 2012, and on May 22, 2013. Zurich offered an affidavit of Stan Braun and a printout of payments made. The evidence offered by Zurich showed that Zurich made the questioned payments to Millender, but that he never cashed them.
Furthermore, a letter from Millender’s attorney regarding the late payments was accepted into evidence as part of exhibit P-1. Although the WCJ refused admittance of some of Millender’s documents, all of those were proffered. Based on the entirety of the record, this court finds that the WCJ did not abuse its discretion in denying the admittance of certain documents.
Mental Treatment
Millender does not appeal the WCJ’s finding that he carried his burden of proof with regard to Zurich’s unreasonable denial of inpatient and outpatient mental treatment, which was to begin at Our Lady of the Lake Tau Center (Tau Center), continue at Margaret Dumas Mental Health Center (Margaret Dumas), and conclude at Family Services of Greater Baton Rouge (Family Services).
Penalty of $2000 for Lack of Authorization of Mental Treatment
Based on the unreasonable denial of the mental health treatment sought by Millender, the WCJ awarded a penalty of $2000 and reasonable attorney’s fees. Mil-lender appeals the amount of the penalty and that he was not awarded out-of-pocket expenses for amounts his medical insurer did not pay. The medical records showed that Millender was treated in the Our Lady of the Lake emergency room and then admitted to the Tau Center on February 3, 2011, until February 7, 2011, for major depression resulting from his hand injury. Millender was then referred Into Margaret Dumas to see a psychiatrist, and later to Family Services. Zurich initially denied compensability of the treatment for depression, but eventually made payments to the providers.
The failure to authorize necessary medical treatment is considered a failure to furnish medical benefits, as required by La. R.S. 23:1203, and will subject the employer to penalties and attorney’s fees pursuant to La. R.S. 23:1201(F). See Authement v. Shappert Engineering, 02-1631 (La.2/25/03), 840 So.2d 1181, 1186. Millen-der has only appealed the amount of the penalty and the manner in which the penalty was derived.
The WCJ clearly stated that the denial of all mental treatment arose out of the initial denial at the Tau Center on February 3, 2011. When Millender was released from the Tau Center, he was released directly to Margaret Dumas and then to Family Services. Zurich denied authorization after being contacted by the Tau Center, when Millender was admitted. The WCJ found that Zurich’s denial of mental health care was one continuous denial, not separate acts of denial. The evidence was Zurich initially denied the Tau Center treatment, but it was never given the op *660 portunity to accept or deny the treatment rendered by Margaret Dumas and Family Services. There was no evidence of either Margaret Dumas or Family Services ever contacting Zurich. This court finds that the findings of the WCJ are reasonable, and therefore, are not an abuse of discretion. See Davis, 149 So.3d at 339.
Millender also- claims that the WCJ erred in not awarding him out of pocket expenses for his mental health care. However, the WCJ found that Millender was never billed by the Our Lady of the Lake emergency room, the Tau Center, or Margaret Dumas. Millender did pay out of pocket for Family Services, but when the bill was turned over to Zurich, it was paid by Zurich. Furthermore, Zurich did pay a bill from Margaret Dumas, and Mil-lender was never billed for these services. | ^Millender also admitted that Zurich paid his out of pocket expenses related to mental health care, but they were paid very late. Therefore, Millender did not carry his burden that he paid unreimbursed out-of-pocket expenses for any mental health treatment.
Credit Reports
At trial, Millender attempted to introduce four credit reports from three credit agencies. Zurich objected to the introduction of the credit reports based on the incompleteness and inaccuracy of the reports. Millender admitted that the credit reports he sought to introduce were incomplete. The WCJ allowed Millender to proffer the credit reports. All of the credit reports indicate that there is no balance owed by Millender, and no report shows when medical bills were submitted for payment to Zurich or whether those medical bills were paid by Zurich.
Workers’ compensation judges are not strictly bound by the technical rules of evidence and have the discretion to determine the admissibility of the evidence in a workers’ compensation proceeding. La. R.S. 23:1317(A). Whether evidence is within the general issues raised by the pleadings is usually a matter left to the discretion of the trial court. Huhn v. Marshall Exploration, Inc., 337 So.2d 561, 567 (La.App. 2 Cir.), writ denied, 339 So.2d 854 (La.1976). The applicable statute only requires that all findings of fact be based upon “competent evidence.” Id. When a reviewing court evaluates the factual findings of a hearing officer under the manifest error standard, it must determine whether the factual findings are reasonable and supported by competent evidence in the record. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, 381. Such a relaxed evidentiary standard brings the possibility that some incompetent evidence will be admitted. Id. at 383. Therefore, the legislature has granted the Office of | iaWorkers’ Compensation the discretion to disregard such admissible, but incompetent, evidence in reaching factual findings. See Id.
Millender attempted to show at trial that he had collection notices on his credit report with reports from different credit agencies. These collection notices were removed from the reports once the medical bills were paid. The WCJ found that the credit reports did not provide any relevant information. We find no reason to overturn the denial of admittance of the credit reports.
Offset pursuant to La. R.S. 23:1212
The WCJ found that the personal health insurer of Millender paid for medical treatment provided by Baton Rouge Cardiology Center, which the WCJ found to be a related and compensable medical expense. However, the WCJ found that Zurich was entitled to an offset for the portion of the Baton Rouge Cardiology *661 Center bill paid by Millender’s personal health insurer pursuant to La. R.S. 23:1212, which provides in pertinent part:
Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or Mend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses.
Millender claims that his insurer is entitled to a full refund. This court finds that La. R.S. 23:1212 is clear that Zurich is entitled to an offset for any payment made by Millender’s health insurer.
Millender does not object to $1.61
The WCJ found that Millender was entitled to $1.61 of the Baton Rouge Cardiology Center bill that he paid out of pocket. Millender does not appeal this portion of the judgment.
| uFailed to meet Burden that Zurich unreasonably denied other medical treatments
Millender claims that there were other medical payments to which he was entitled that the WCJ denied. An employer’s failure to authorize a necessary medical procedure is deemed to be a failure to furnish the benefits required by La. R.S. 23:1203, and the failure to authorize such treatment subjects the employer to penalties and attorney’s fees under La. R.S. 23:1201(F). See Authement, 840 So.2d at 1186. Penalties and attorney’s fees are recoverable unless the claims are reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201(F). A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the appellant. See Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885, 890. The determination of whether an employee should be awarded penalties and attorney’s fees for the employer’s or insurer’s failure to authorize necessary medical treatment is a question of fact. Such findings are subject to the manifest error standard of review. James v. A & B Builders, 09-0781 (La.App. 1 Cir. 10/23/09), 29 So.3d 541, 546.
The WCJ found that Zurich had reasonable grounds to deny certain testing by a physical therapist. The WCJ found that Zurich reasonably controverted the claim for treatment, had used a utilization review, and based its opinion on the second medical opinion of Dr. Michael Robichaux. Dr. Robichaux opined that the cubital tunnel syndrome was not related to Millen-der’s work-related injury and ongoing physical therapy was unnecessary.
Millender provided no specific evidence that Zurich unreasonably denied the additional medical treatment sought. This court finds no manifest error on the part of the WCJ.
11 Jailed to meet burden that Dr. Robi-chaux committed fraud
. Millender claimed the WCJ erred in failing to find that Dr. Robichaux committed fraud by violating La. R.S. 23:1208. The requirements for a finding of fraud governing misrepresentations concerning workers’ compensation benefits are that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. La. R.S. 23:1208; Atwell v. First General Services, 06-0392 (La.App. 1 Cir. 12/28/06), 951 So.2d 348, 353, writ denied, 07-0126 (La.3/16/07), 952 So.2d 699.
Millender claimed that Dr. Robichaux lectured him during the IME and told him,
“If I were your Mend, I would have kicked you’re A-S-S a long time ago.” *662 Millender also claimed -that Dr. Robichaux advised him to drop his claim and return to work. He also claimed that Dr. Robi-chaux pressed on his hand to the point of pain during the examination.
The WCJ listened to the testimony of Millender and reviewed the deposition of Dr. Robichaux to determine if any fraud was committed. The issue of whether an employer, or his agent, willfully made a false statement or representation for the purpose of defeating benefits is one of fact, which is not to be reversed on appeal, absent manifest error. Scott v. Wal-Mart Stores, Inc., 03-0858 (La.App. 1 Cir. 2/23/04), 873 So.2d 664, 672. Millen-der claims the WCJ erred in failing to find fraud on the part of Dr. Robichaux due to alleged comments he made to Millender and actions he took during the IME. The WCJ found that Millender’s testimony alone was insufficient to meet the burden of proving that Dr. Robichaux made false statements or representations for the purpose of defeating Miller’s claim for worker’s compensation benefits. The WCJ also noted that Dr. Peterson had 11fiopiiied that Dr. Robichaux was attempting to perform a good second medical examination and trying to form his own opinion.
Millender also claims that the WCJ failed to review' a letter written to his previous attorney regarding the fraud of Dr. Robichaux. However, there is nothing in the record to indicate that the WCJ had a letter written to attorney Denise Vinet before it. Attached to the request for an IME is an unsworn statement by Millen-der written to Dr. Peterson regarding his visit to Dr. Robichaux, stating alleged statements made by Dr. Robichaux. Mil-lender was allowed to testify to these same statements allegedly made by Dr. Robi-chaux. We agree with the WCJ that Mil-lender did not carry his burden of proving fraud on the part of Dr. Robichaux.
Court costs and attorneys fees
Millender appears to acquiesce in the award of court costs to Vinet in the amount of $2449.45, but claims the court expedited ■ the withdrawal of Vinet as his attorney of record. Millender’s claim is not a proper issue for appeal. Millender also claims that the award of attorney’s fées of $7500 is peculiar. This court does not read this statement to be an assignment of error, and the judgment is affirmed as to the determination that court costs and attorney’s fees should be awarded.
On January 15, 2013, Millender’s counsel, Denise A. Vinet, filed a motion to withdraw as Millender’s counsel of record, alleging. that she ■ and Millender had “reached irreconcilable differences in this matter.” The WCJ signed an order granting the motion to withdraw on January 16, 2013, and Vinet filed a petition for intervention on January 23, 2013, requesting “statutory attorney fees as reasonable compensation for legal services rendered.” She further prayed that “a lien be created such that the issue of attorney fees should be received prior to claimant’s collecting a judgment or entering into a lump sum settlement in this matter.
|17At trial, the WCJ acknowledged that she had failed to give Vinet timely notice of the trial, so Vinet did not present her claim, even though she was present at the trial. The WCJ found that the intervention involved “a reasonable attorney’s fee,” and she was aware of the work that was done in the case, but she would set a separate hearing on the intervention if the parties desired it. Nevertheless, the WCJ explained “I could very easily tell you — I mean, you know, set an attorney’s fee, based on the depositions I’ve read and the record.”
When counsel for the defendants hesitated in acquiescing, noting that there was *663 no “itemization of hours” from Vinet, the WCJ further explained:
And Ms. Vinet will admit, she wasn’t here for trial. So she didn’t prepare for . trial, but she did work the case, filed the 1008, went to these depositions, with the exception of Dr. Morrow, of course, worked the case up, filed amended petitions and what have you, and I could look at — I mean, I have the figure in my head that I think that I could go ahead....
After further discussion with counsel for the defendants, the WCJ asked Vinet if she objected to her setting the fee, to which Vinet responded “[n]o, not at all.” The WCJ then asked Millender if he objected, and he responded, “[n]o, your hon- or.” The WCJ then awarded Vinet $7,500 “as a reasonable attorney’s fee for the two penalty situations.”
Millender does appeal the amount of attorney’s fees awarded. Factors to be considered in the imposition of reasonable attorney fees in workers’ compensation cases include the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Phillips v. Sanderson Farms, Inc., 13-0285 (La.App. 1 Cir. 11/1/13), 136 So.3d 27, 31. In a workers’ compensation case, the WCJ is allowed to call upon its own experience and expertise in determining the amount of time and effort that a lawyer has put into the preparation of a case. Smith v. Phillip Morris, U.S.A., 02-0103 (La.App. 1 Cir. 12/20/02), 858 So.2d 443, 450. The amount of attorney fees awarded by the |18WCJ pursuant to La. R.S. 23:1201 is reviewed under an abuse of discretion standard. See Nitcher v. Northshore Regional Medical Center, 11-1761 (La.App. 1 Cir. 5/2/12), 92 So.3d 1001, 1014, writ denied, 12-1230 (La.9/21/12), 98 So.3d 342. Considering the factors stated above, the record before us, and the parties’ acquiescence at trial, we do not find that WCJ abused her discretion in the amount awarded.
Affidavit of Stan Braun
Millender alleges that the trial court erred in accepting the affidavit of Stan Braun, an adjuster who replaced Russell Charbonnet, the original adjuster. The WCJ noted that the parties had entered into a consent judgment which was signed on May 6, 2009. Therefore, the issues before the WCJ only concerned events taking place after that date. Braun testified by affidavit upon the written records of Zurich that a disability check was mailed to Millender for the week ending May 7, 2009. Everything else contained in the affidavit pertains to actions taken by Braun beginning November 6, 2010, after which he became the adjuster on Millen-der’s case. In a workers’ compensation proceeding, subject to discretionary limits, the mere fact that evidence is hearsay is not a sufficient ground to exclude it. Wynder v. Royal Ford Lincoln Mercury, Inc., 98-616 (La.App. 3 Cir. 10/28/98), 721 So.2d 1001, 1005, writ denied, 98-2966 (La.2/5/99), 738 So.2d 2. We agree that the affidavit of Stan Braun was properly admitted.

CONCLUSION

For the reasons set forth above, the judgment of the worker’s compensation judge is amended to state August 12, 2007, as the date of the workplace accident, and in all other respects, the judgment is affirmed. Costs of the appeal are assessed against Kevin Todd Millender.
JUDGMENT AMENDED AND AFFIRMED AS AMENDED.

. There was a discrepancy in the judgment as to the exact date of injury which will be discussed later in this report.